# Exhibit A

**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**11/4/2021 2:38 PM**
**CLERK OF THE COURT**
**Patricia Serna**

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

SHARON GUERRA,

     Plaintiff,

v.                       Case No.:   D-202-CV-2021-06369

SEQUEL OF NEW MEXICO, LLC
d/b/a BERNALILLO ACADEMY,
SEQUEL YOUTH AND FAMILY SERVICES,
and AMIR RAFIEI, as Executive Director,

     Defendants.

## <u>COMPLAINT FOR DAMAGES</u>

     COMES NOW Plaintiff Sharon Guerra, by and through her counsel Roybal-Mack & Cordova, P.C. (Amelia P. Nelson), pursuant to the New Mexico Rules of Civil Procedure and for her Complaint for Damages against Defendants Sequel of New Mexico, LLC d/b/a Sequel Youth and Family Services and Amir Rafiei, in his capacity as executive director, states the following:

### <u>NATURE OF CASE</u>

1. This case arises from Defendants Sequel and Bernalillo Academy discharge of Ms. Sharon Guerra from employment in retaliation against her for reports and requests for personal protective equipment to prevent the spread of COVID-19 and because she was unable to attend work while recovering from COVID-19.

2. This matter is brough under the Fair Labor Standards Act and the Family and Medical Leave Act pursuant to the Families First Coronavirus Response Act and common law.

3. By reason of Defendants' conduct, Mrs. Guerra has been damaged in an amount to be determined at trial, and this action seeks actual, compensatory, hedonic, punitive and

liquidated damages, interest, and reasonable costs and attorney's fees for the damages suffered.

PARTIES & JURISDICTION

4. Plaintiff Sharon Guerra is a resident of the City of Albuquerque, County of Bernalillo, State of New Mexico, and was employed by Defendant Sequel of New Mexico, LLC d/b/a Bernalillo Academy at all times material to this complaint.

5. Defendant Sequel of New Mexico, LLC d/b/a Bernalillo Academy (*hereinafter* "Bernalillo Academy") is a sub-acute, psychiatric residential treatment center licensed to conduct business in the State of New Mexico, incorporated in the State of Delaware with a principal place of business in the City of Albuquerque.

6. Defendant Sequel Youth and Family Services, LLC (*hereinafter* "Sequel YFS") is a behavioral health organization that develops and operates treatment programs and is incorporated in the State of Iowa.and licensed to conduct business in the State of New Mexico.

7. Defendant Amir Rafiei (*hereinafter* "Rafiei") is sued in his official capacity as Bernalillo Academy Executive Director which is located in the City of Albuquerque, County of Bernalillo, State of New Mexico, at all times material to this complaint.

8. Pursuant to N.M. Const. art. VI, § 13, this Court has jurisdiction over this matter and venue is proper pursuant to NMSA 1978 § 38-3-1(A) because the circumstances and transactions in this action occurred in the County of Bernalillo and State of New Mexico.

FACTS

9. Sequel New Mexico d/b/a Bernalillo Academy terminated Mrs. Guerra's employment on November 11, 2020, because she was unable to return to the workplace due to a diagnosis of COVID-19 and the associated symptoms from the virus.

10. She was exposed to the coronavirus at work and infected with COVID-19 as a result. This, in turn, infected her entire family, who all eventually suffered from the symptoms associated with the virus.

11. She was significantly and detrimentally impacted by Sequel's actions and inactions and has suffered losses consequently.

12. When the Bernalillo Academy facility was struck with viral COVID-19 outbreaks students and staff were infected.

13. As the nursing director, Mrs. Guerra was responsible for designing, supervising, and implementing coronavirus testing for students and employees.

14. To ensure safety, she implemented the use of N95 masks as part of the PPE. This decision was denied by Amir Rafiei, Executive Director of Bernalillo Academy, based on profit margin, lack of necessity, and the perception that PPE would suggest staff were more valued.

15. N95 masks were not provided and nurses, including Mrs. Guerra, were infected by COVID-19.

16. On November 13, 2020, Executive Director Rafiei stated "I have talked with corporate's HR. You have received COVID pay for the past two weeks. Corporate will require a Dr. note with the reason you will be absent and the dates [sic] otherwise you will have to come to work on 11/16/2020."

17. Notably, Mrs. Guerra had and thereafter did provide medical doctor's notes and information.

18. Mrs. Guerra provided a physician's note, but Mr. Rafiei required that Mrs. Guerra return to work on November 16, 2020.

19. Mrs. Guerra obtained a follow up COVID test, and she worked in the office from 9-2pm in her attempt to sustain employment at Bernalillo Academy. To protect others at work, she wore a N96 carbon filtered mask that was personally obtained.

20. On November 18, 2020, Mrs. Guerra again requested that N95 masks be provided to staff who were involved with testing and those in contact with COVID positive residents.

21. In emails exchanged throughout the day Mr. Rafiei stated that N95 masks would not be provided due to "nation shortage and price gouging" and "[b]buying nurses N95s will make it look like we hold them higher than anyone else. Considering the challenges with acquiring N95[s] it won't be a sustainable nor realistic practice."

22. Mrs. Guerra personally purchased N95 masks for nursing and stated she would like to give them to anyone high risk who was working, and told Mr. Rafiei that she "just don't want anyone else to die like Michael."

23. While Mrs. Guerra hoped to be in the office that day, after a discussion at the morning meeting that Bernalillo Academy would allow certain staff to work from home, she inquired (via email) if she could also work from home.

24. No response was received until 3:09pm (after the anticipated start time) at which time Mr. Rafiei stated: Retesting yourself is against the department of health and the CDC's advice. Also, I don't understand why you do not trust the medical advice on KN95 masks. As for retesting, you will most likely be positive. You have mentioned Michael a couple

of times. It was a tremendous loss. An investigation will happen to determine whether he contracted COVID at work or not. Regardless, we will support his family. It seems like you did not come in today. Correct?

25. Mrs. Guerra responded: Amir, my doctor is the one who instructed me to test again yesterday, he is the physician with medical expertise in this area. Any advice given by the DOH or CDC would not be relevant if one's physician determines otherwise. I will say though that the DOH informed me directly that I needed to be tested again this week along with my family. I will say that Michael passing is a huge loss to BA, and he was truly dedicated to our organization. As far as coming into work I asked you if I can work from home? Please refer to email at 12:29pm.

26. Mr. Rafiei responded that the agreed work time was from 9 – 2 and that she had taken the day off without approval. He stated "I have been trying to accommodate you, but we need a full-time Director of Nursing who can work 40 hours especially during this time. It's not fair to your staff or ours to not have a full-time director. My suggestion is step down to part-time nurse for now or resign unless you can do 40 hours. I can grant some PTOs since I appreciate your time at Bernalillo Academy." A follow up phone call was held to clarify Mr. Rafiei's intentions and Mrs. Guerra's employment was terminated.

27. After reporting her concerns and repeatedly advising of the need for PPE appropriate for the medical staff and being denied, Sequel through its executive director and human resources, retaliated against her for objecting to the denial of PPE and reporting concerns about safety and health.

28. Additionally, evidence demonstrates that she was retaliated against through use of continued denials of PPE, mandates to return to the workplace before she was symptom

free and had a negative COVID test, and termination from employment, because she

applied for New Mexico Worker's Compensation.

29. During her employment she was never disciplined until she objected to the denial of

reasonable personal protective equipment (PPE) and after she was diagnosed with and

suffered from COVID-19.

30. Defendant Rafiei served as the Executive Director of Sequel and Mrs. Guerra's

supervisor.

31. Vance Hutchison served as the Human Resources manager for Sequel.

32. Sequel LLC operates a treatment facility known as Bernalillo Academy which is a sub-

acute, psychiatric residential treatment center that specializes in treating children with

Autism Disorder, Neurodevelopmental Disorders, Intellectual/Developmental Disabilities

and other Emotional and Behavioral Disorders.

33. The Bernalillo Academy mission is to empower families and their children through

comprehensive, specialized treatment in a home-like residential setting that impacts

positive improvement of each child's quality of life.

34. The Bernalillo Academy focuses on behavioral change through a diverse approach to

treatment, including Applied Behavior Analysis-based therapies (ABA), 24-hour on-site

nursing care, intensive psychiatry care, as well as individual, group, and family therapies.

35. In April 2020, a co-worker tested positive for COVID-19 and shortly after died

apparently of complications associated with COVID-19.

36. It is believed that the co-worker contracted the virus at Bernalillo Academy, as students

and staff had contracted the virus at Bernalillo Academy.

37. On October 26, 2020, Mrs. Guerra began testing BA students and staff for COVID, and requested N95 masks for herself and other nurses and staff, but Bernalillo Academy refused to order N95 masks alleging that their current PPE was sufficient.

38. On October 26, 2020, Mrs. Guerra completed a COVID-19 test which was negative.

39. On October 28, 2020, Mrs. Guerra retrieved COVID testing kits from the State Department of Health and was advised that N95 masks were available.

40. Mrs. Guerra made several requests to Defendant Rafiai seeking sufficient PPE for the staff at Bernalillo Academy but was denied.

41. On October 30, 2020, Mrs. Guerra submitted a second COVID test.

42. On October 31, 2020, Mrs. Guerra felt COVID-19 symptoms and informed Defendant Rafiai immediately of her symptomology.

43. Between November 2 and November 6, 2020, Mrs. Guerra worked from home due to the COVID-19 symptoms and agreed not to return to work until she was asymptomatic and

44. On November 5, 2020, Mrs. Guerra received notification that her COVID-19 test was positive, and she was instructed by the Department of Health to remain in isolation for ten (10) days.

45. On November 6, 2020, Defendant Rafiei requested a telephone conference with Mrs. Guerra at 6:44 p.m., but she was unable to respond due to the severity of her illness.

46. Mrs. Guerra's doctor advised that she should not return to work until she received a negative test.

47. Mrs. Guerra informed Defendant Rafiei that she was required to receive a negative COVID test before returning to work but Defendant Rafiei requested that Mrs. Guerra attend work related activities via Zoom.

48. Between November 9 and 13, 2020, Mrs. Guerra advised that she was too ill to consistently work from home but Defendant Rafiei continued to require her attendance at virtual meetings.

49. On or about November 9, 2020, Mrs. Guerra filed a worker's compensation claim with the understanding that she was exposed to coronavirus at work and was positive for COVID-19.

50. After filing the claim, Defendant Rafiei's harassing and hostile conduct increased and his demands became more specific related to Mrs. Guerra's return to work.

51. On November 10, Defendant Rafiei and Bernalillo Academy HR advised Mrs. Guerra that they were aware of the workers compensation claim and requested a date that she would return to work. She advised she would return to work when the symptoms subsided, she was released by her medical practitioner, and received a negative COVID result anticipated to be on or about December 2, 2020.

52. On November 11, 2020, Defendant Bernalillo Academy sent an email advising that an Assistant Director of Nursing was appointed.

53. On November 15, 2020, Mrs. Guerra notified Defendant Rafiei that she was in contact with her physician and awaiting further instruction.

54. Mrs. Guerra's family members were now suffering from COVID-19 and presenting with symptoms.

55. On November 16, 2020, Mrs. Guerra spoke with Defendant Rafiei and Defendant Bernalillo Academy HR Director regarding a return to work schedule. She advised again that she would attempt to work pending symptoms.

56. On November 16, 2020, Mrs. Guerra's medical practitioner informed her that he recommended that she work from home until she received a negative COVID-19 test result. Mrs. Guerra informed Defendant Rafiei of the recommendation.

57. On November 17, 2020, Defendant Rafiei contacted Mrs. Guerra advising that he required her at work that day. Mrs. Guerra returned to work because of the threat of discipline or termination if she did not return.

58. On November 18, 2020, Mrs. Guerra notified Defendant Rafiei that she would attempt to work that day from 1 p.m. to 5 p.m.; however, during the morning meeting staff were advised that they were permitted to work from home and Mrs. Guerra requested that she also be able to work from home. No response was received from Defendant Rafiei until later that afternoon.

59. Defendant Rafiei responded as follows to the request to work from home stating: "Retesting yourself is against the department of health and the CDC's advice. Also, I don't understand why you do not trust the medical advice on KN95 masks. As for retesting, you will most likely be positive. You have mentioned Michael a couple of times. It was a tremendous loss. An investigation will happen to determine whether he contracted COVID at work or not. Regardless, we will support his family. It seems like you did not come in today. Correct?"

60. In response, Mrs. Guerra again advised that her medical doctor instructed her to test again and to return to work upon receipt of a negative result, and requested that she be permitted to work from home. This was denied.

61. On November 20, 2020, Defendants terminated Mrs. Guerra's employment.

62. Mrs. Guerra never advised Defendants that she voluntarily resigned.

<u>**COUNT I:**</u>
<u>**VIOLATION OF THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT**</u>
<u>**EPSLA**</u>

63. Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

64. The Families First Coronavirus Response Act (FFCRA) requires certain employers to provide employees with paid sick leave or expanded family and medical leave for specified reasons related to COVID-19.

65. The temporary rule was in response to the 2020 COVID-19 pandemic and implemented the EPSLA and the EFMLEA, as modified by the CARES Act.

66. The EPSLA requires that certain employers provide two workweeks (up to 80 hours) of paid sick leave to eligible employees who need to take leave from work for specified reasons related to COVID-19.

67. Under the EPSLA it is unlawful for an employer to require an employee who uses paid sick time to find a replacement employee to cover his or her hours, require an employee to use other paid leave before the employee uses the paid sick time, and/or to terminate, discipline, or otherwise retaliate against an employee who has a) used the sick pay offered under the FFCRA, or b) complained about an employer's failure to abide by the sick pay provisions of the FFCRA.

68. Mr. Rafiei required that Mrs. Guerra cover her position by returning to work, and then terminated her for the use of sick leave and inability to work while she was infected.

69. An employer who violates the mandatory sick pay provisions **or** the anti-retaliation provisions of the FFCRA is considered to have violated the Fair Labor Standards Act ("FLSA").

70. Based on the FLSA, Defendants are subject to penalties including: backpay of wages owed; liquidated damages (double damages – an additional amount equal to the wages owed); attorneys' fees and expenses; pre-judgement and post-judgment interest; and injunctive relief (an order preventing the employer from continuing to engage in the unlawful practice).

71. Generally, the FFCRA provides that employees of covered employers are eligible for two (2) weeks (up to 80 hours) of paid sick leave at the employee's regular rate of pay where the employee is unable to work because the employee is quarantined (pursuant to Federal, State, or local government order or advice of a health care provider), and/or experiencing COVID-19 symptoms and seeking a medical diagnosis.

72. Under the FFCRA, an employee qualifies for paid sick time if the employee is unable to work (or unable to telework) due to a need for leave because the employee:

a.  is subject to a Federal, State, or local quarantine or isolation order related to COVID-19;

b.  has been advised by a health care provider to self-quarantine related to COVID-19;

c.  is experiencing COVID-19 symptoms and is seeking a medical diagnosis;

d.  is caring for an individual subject to an order described in (1) or self-quarantine as described in (2);

e.  is caring for a child whose school or place of care is closed (or child care provider is unavailable) for reasons related to COVID-19; or

f.  is experiencing any other substantially similar condition specified by the Secretary of Health and Human Services, in consultation with the Secretaries of Labor and Treasury.

73. Employers may not discharge, discipline, or otherwise retaliate against any employee who takes leave under the Expansion Act., and an employer who violates the mandatory sick pay

provisions or the anti-retaliation provisions of the FFCRA is considered to have violated the Fair

Labor Standards Act ("FLSA").

74. The FLSA governs wage and hour standards for employers. An employer who has violated

the mandatory sick pay provisions will be considered to have failed to pay its employees minimum

wages in violation of the FLSA.

75. Employers who violate the EFMLA are subject to the same enforcement provisions as

the Family and Medical Leave Act ("FMLA").

76. The FFCRA PFML mandates are enforced under existing mechanisms of the federal

FMLA and permit a private cause of action, with monetary and liquidated damages.

77. The PST mandate is enforced under the mechanisms of the Fair Labor Standards Act,

which permits a private cause of action, with monetary and liquidated damages.

78. Mrs. Guerra was absent from work due to COVID-19 symptoms and a positive test

resulting in quarantine and isolation from October 20, 2020, to November 20, 2020 at which time

she was discharged.

79. Mrs. Guerra was unable to work because she was quarantined pursuant to State order and

the advice of her health care provider, and was experiencing COVID-19 symptoms and seeking a

medical attention.

80. Mrs. Guerra was caring for her children who also contracted COVID-19 from her.

81. Defendants were notified of Mrs. Guerra's illness, positive test, and were aware of the

State Public Health Orders and the medical provider recommendations.

82. Defendants violated the FFCRA by actively interfering with covered leave under the

FFCRA.

83. Mrs. Guerra was discharged on November 20, 2020, after being given no reasonable option to remain on covered leave pending a negative COVID test result.

84. No reasonable person in Mrs. Guerra's position would have been expected to continue employment based on the choices and mandates.

85. Defendants are liable to Mrs. Guerra for damages caused by their actions including compensatory damages (including back pay, lost benefits, front pay, and emotional distress), liquidated damages (double damages – an additional amount equal to the wages owed), attorneys' fees and expenses, pre-judgment and post-judgment interest, injunctive relief (an order preventing the employer from continuing to engage in the unlawful practice), and reinstatement.

## COUNT II
## VIOLATION OF THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT
## EMERGENCY FAMILY AND MEDICAL LEAVE ACT

86. Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

87. The EFMLEA applies to employees who have been employed for at least 30 calendar days.

88. Under the Act, an employer may provide the first 10 days of leave unpaid, then future absences beyond the 10-days must be paid at two-thirds the employee's regular rate of pay for up to 12 weeks total leave.

89. Following an employee's return from leave, the employee is entitled to be restored into her same or a similar position.

90. Employers may not discharge, discipline, or otherwise retaliate against any employee who takes leave under the Act.

91. Employers who violate the EFMLEA are subject to the same enforcement provisions as the Family and Medical Leave Act.

92. Mrs. Guerra tested positive for COVID-19 and suffered from the associated and debilitating symptoms.

93. Contrary to the New Mexico Public Health Order and the FFCRA, Bernalillo Academy retaliated and harassed Mrs. Guerra for her inability to return to work between October 30 and November 16, 2020, at which time Bernalillo Academy terminated her employment.

94. Defendants forced Mrs. Guerra to choose between returning to work while she was infected with COVID-19 and suffering from the symptoms or termination.

95. Mrs. Guerra advised Defendants that she was unable to return to work until she tested negative for COVID-19 and resolved the symptoms.

96. Mrs. Guerra actively attempted to return to work from a home.

97. Defendants discharged Mrs. Guerra for her inability to return to work while she was infected with COVID-19 and suffering from the symptoms.

98. Defendants violated the and are liable for compensatory damages (including back pay, lost benefits, front pay, and emotional distress); liquidated damages (double damages – an additional amount equal to the wages owed); attorneys' fees and expenses; pre-judgement and post-judgment interest; injunctive relief (an order preventing the employer from continuing to engage in the unlawful practice); and reinstatement.

## COUNT III
## WORKERS COMPENSATION RETALIATION

99. Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

100.     Employers may not retaliate against an employee who exercises his or her rights under workers' compensation laws, and an employer cannot discharge an employee in retaliation for the employee's filing of a workers' compensation claim

101.     On November 10, 2020, Mr. Rafiei advised that Bernalillo Academy was notified that she filed a worker's compensation claim.

102.     At this time, he demanded that she return to work, removed her duties to address and secure PPE, and advised that KN95 masks were appropriate.

103.     Mrs. Guerra responded that she was sorry for any confusion and that she understood his instructions for ordering supplies, but that the nurses were scared and concerned that they were not provided adequate PPE.

104.     Mrs. Guerra notified Mr. Rafiei that she had filed a worker's compensation claim due to ongoing inability to work due to the on-the-job exposure and subsequent COVID-19 illness, and that she would return upon release from her physician to return to work.

105.     Defendants forced Mrs. Guerra to choose between returning to work while she was infected with COVID-19 and suffering from the symptoms or termination.

106.     Mrs. Guerra advised Defendants that she was unable to return to work until she tested negative for COVID-19 and resolved the symptoms.

107.     Mrs. Guerra actively attempted to return to work from a home.

108.     Defendants discharged Mrs. Guerra following her workers compensation claims alleging pretextually that it was due to her inability to return to work while she was infected with COVID-19 and suffering from the symptoms.

109.     Defendants are jointly and severally liable for all damages to Plaintiff, including compensatory, actual, consequential, and nominal damages, and fees and costs of this lawsuit.

110.     Defendants conduct was knowingly wrongful, malicious, and wanton, and gives rise to an award of punitive damages

## COUNT IV:
## WRONGFUL DISCHARGE
## (PUBLIC POLICY/RETALIATION)

111.     Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

112.     Employment without a definite term is presumed to be at will; however, at-will employees can be terminated for any objectively reasonable reason that does not violate statutory, constitutional, or common law rights.

113.     New Mexico courts have recognized an exception to the general rule of at-will termination when an employee is discharged in retaliation for engaging in an act favored by public policy and exercising a legal right.

114.     For example, employers are prohibited from firing or otherwise retaliating against employees who make workplace safety complaints or participate in investigations or legal proceedings regarding such violations.

115.     To support a cause of action based on retaliatory discharge, an employee must: (1) identify a specific expression of public policy which the discharge violated; (2) demonstrate that

he or she acted in furtherance of the clearly mandated public policy; and (3) show that he or she was terminated as a result of those acts.

116.     Mrs. Guerra voiced concerns and objections about the personal protective equipment purchased and used by Defendants.

117.     Mrs. Guerra voiced concerns that the employee who had died from COVID-19 may have been exposed at work and because of insufficient PPE.

118.     Mrs. Guerra reported that she was concerned about COVID-19 exposure for herself and other employees.

119.     Mrs. Guerra was exposed to and contracted COVID-19 after working with the Bernalillo Academy population and without sufficient and proper PPE for the position.

120.     Mrs. Guerra advised Defendants that she would be able to return to work upon receiving a negative COVID test and recovering from the COVID-19 symptoms.

121.     Defendants forced Mrs. Guerra to choose between returning to work while she was infected with COVID-19 and suffering from the symptoms or relinquishment of her position and termination.

122.     Mrs. Guerra advised Defendants that she was unable to return to work until she tested negative for COVID-19 and resolved the symptoms.

123.     Mrs. Guerra actively attempted to return to work from a home.

124.     Defendants discharged Mrs. Guerra for her inability to return to work while she was infected with COVID-19 and suffering from the symptoms.

125.     The limitations resulting from the COVID were open, obvious, and apparent to the employer.

126.     Defendants terminated Mrs. Guerra's employment when she was not able to continue work full time while she suffered from the debilitating medical condition and because she could return to the workplace before she tested negative.

127.     Defendants' conduct caused injuries and damages to Mrs. Guerra in an amount to be proven at trial.

128.     Defendants are liable to Mrs. Guerra for lost income, emotional distress, compensatory, actual, nominal and punitive damages, fees and costs, and in amounts to be proven at trial.

## COUNT V
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT 29 U.S.C. § 2612

129.     Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

130.     To set forth a retaliation claim under the FMLA, a plaintiff must allege that (1) s/he exercised rights protected under the FMLA, (2) s/he was qualified for her position, (3) s/he suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.

131.     FMLA allows eligible employees to take leave because of their own illness or disability.

132.     Mrs. Guerra obtained approved leave because of the symptoms and illnesses arising from her exposure to COVID-19.

133.     Mrs. Guerra remained qualified to work in her position.

134.     Mrs. Guerra suffered adverse employment action when she was terminated.

135.     Defendant retaliated against Mrs. Guerra by denying continued protected leave despite receiving notice of the ongoing serious medical condition and then terminating Mrs. Guerra.

136.     Defendant intentionally violated the FMLA because it knew and/or showed reckless disregard for whether its conduct was prohibited by the statute and through its employees failed and refused to comply with the law and had an untenable reasoning to engage in its conduct.

137.     Defendants affirmatively evaded the terms of the FMLA and showed reckless disregard for whether its conduct violated the law.

138.     Defendants' conduct caused Mrs. Guerra damages, including exacerbated symptomology, stress, anxiety, and mental anguish, and economic and financial damages including lost wages and benefits.

139.     Defendants are liable to Mrs. Guerra for damages caused and Mrs. Guerra is entitled remedies including lost wages, compensation, benefits, interest, liquidated damages, attorney fees and costs, and other equitable relief to be proven at trial.

## <u>COUNT VI</u>
## <u>BREACH OF IMPLIED CONTRACT</u>

140.     Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

141.     New Mexico courts have upheld findings of an implied employment contract provision that restricted the employer's power to discharge. Where there is proof of a promise sufficient to support an implied contract between employer and employee, consideration sufficient to support an implied contract will be implied as a matter of law by the court, so long

as the promise: (1) was part of the original employment agreement; or (2) was made later in modifying the employment relationship.

142.     Defendants implemented policies and procedures through the Bernalillo Academy Policy & Procedure Manual (BAPP)

143.     Mrs. Guerra acknowledged receipt and understanding of the policies and procedures and was expected to abide by the BAPP.

144.     Mrs. Guerra could reasonably expect her employers to conform to the procedures outlined in the BAPP.

145.     The BAPP governed safety, attendance, leave, and disciplinary processes, as well as including an Equal Opportunity and Commitment to Diversity provision.

146.     Defendants by and through its employees breached the BAPP by the following nonexclusive manners: harassing Mrs. Guerra for requesting personal protective equipment for the staff, subjecting Mrs. Guerra to an unsafe atmosphere, denying Ms. Guerra leave for her serious medical condition, disciplining for leave take after requested and with notice, and retaliating against Mrs. Guerra for objecting to and voicing concerns about the state of the personal protective equipment.

147.     Defendants by and through its employees breached the BAPP by violating the state and federal medical leave laws.

148.     Defendants by and through its employees breached the BAPP by retaliating against Mrs. Guerra and invoking an adverse employment action (termination).

149.     Defendants by and through its employees breached the BAPP when it failed to report the workplace injury to the proper authorities and placing a report of the claim in Mrs. Guerra's file.

150.    Defendants' conduct caused Mrs. Guerra damages, including exacerbated symptomology, stress, anxiety, and mental anguish, and economic and financial damages including lost wages and benefits.

151.    Defendants are jointly and severally liable to Mrs. Guerra for damages caused and Mrs. Guerra is entitled remedies including lost wages, compensation, benefits, interest, liquidated damages, attorney fees and costs, and other equitable relief to be proven at trial.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests the Court assume jurisdiction over this matter, set this for jury trial, and enter judgment as follows:

a.    Find in favor of Plaintiff and against Defendant;

b.    Find Defendants jointly and severally violated the laws and are liable for damages caused in amounts to be proven at trial by a jury;

c.    Award Plaintiff liquidated damages pursuant to the laws;

d.    Award Plaintiff lost income, including back and front pay, reinstatement of position or compensation in the alternative, compensatory, actual and nominal damages, punitive damages, interest, and court costs, including those expended for expert witnesses and attorney's fees, and

e.    Award such other and further relief that the Court deems just and equitable.

Respectfully Submitted:

ROYBAL-MACK & CORDOVA, P.C.

_/s/ Amelia P. Nelson 11/4/2021_____
AMELIA P. NELSON
*Attorneys for Plaintiff*
4901 Chappell Road NE, Suite B
Albuquerque, NM 87107
Tele: (505) 288-3500
amelia@roybalmacklaw.com

| SUMMONS | |
|---|---|
| SECOND JUDICIAL DISTRICT COURT<br>County Of Bernalillo, New Mexico<br>Court Address: 400 Lomas Blvd. NW<br>　　　　　Albuquerque, NM 87102<br>Court Telephone No.: (505) 841-8400 | Case Number:　D-202-CV-2021-06369<br><br>Judge:　Franchini, Nancy J. |
| SHARON GUERRA,<br>　　　Plaintiff,<br><br>v.<br><br>SEQUEL OF NEW MEXICO, LLC<br>d/b/a BERNALILLO ACADEMY,<br>SEQUEL YOUTH AND FAMILY<br>SERVICES,<br>and AMIR RAFIEI, as Executive Director,<br>　　　Defendants. | Defendant Name:<br><br>SEQUEL YOUTH AND FAMILY SERVICES<br><br>Physical Address:<br>1131 Eagletree Lane<br>Huntsville, AL 35801 |

### TO THE ABOVE NAMED DEFENDANT(S): Take notice that

1. A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.
2. You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.
3. You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.
4. If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.
5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.
6. If you need an interpreter, you must ask for one in writing.
7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

Dated at＿＿＿＿＿11/4/2021＿＿＿＿＿, New Mexico, this＿＿＿＿day of＿＿＿＿＿＿, 2020.

Katina Watson
SECOND JUDICIAL DISTRICT COURT
CLERK OF THE COURT

By: ＿＿＿＿＿＿＿＿＿＿
Deputy Clerk

Respectfully Submitted:

ROYBAL-MACK & CORDOVA, P.C.

/s/ Amelia P. Nelson＿＿＿＿＿＿＿
AMELIA P. NELSON
*Attorneys for Plaintiff*
1121 4th Street NW Ste. 1D
Albuquerque, NM 87102
Phone: (505) 288-3500
Fax:　 (505) 288-3501
amelia@roybalmacklaw.com

**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**11/4/2021 2:38 PM**
**CLERK OF THE COURT**
**Patricia Serna**

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

SHARON GUERRA,

      Plaintiff,

v.                          Case No.: D-202-CV-2021-06369

SEQUEL OF NEW MEXICO, LLC
d/b/a BERNALILLO ACADEMY,
SEQUEL YOUTH AND FAMILY SERVICES,
and AMIR RAFIEI, as Executive Director,

      Defendants.

## JURY DEMAND – SIX PERSON

**COMES NOW**, Plaintiff Sharon Guerra, by her undersigned counsel, Roybal-Mack &

Cordova, P.C. (Amelia P. Nelson), pursuant to Rule 1-038 NMRA, and files a demand for trial

by a jury of six (6) persons. Plaintiff hereby deposits the sum of $150.00 with the Clerk of the

Court.

**WHEREFORE,** Plaintiff respectfully requests that this case be placed on the jury docket

and assigned a jury of six (6) persons.

                                  *Respectfully Submitted by:*

                                  ROYBAL-MACK & CORDOVA, P.C.

                                  */s/ Amelia P. Nelson*
                                  AMELIA P. NELSON
                                  *Attorneys for Plaintiff*
                                  4901 Chappell Dr. NE Suite B
                                  Albuquerque, NM 87107
                                  Phone: (505) 288-3500
                                  Fax:    (505) 288-3501
                                  Amelia@roybalmacklaw.com

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
11/4/2021 2:38 PM
CLERK OF THE COURT
Patricia Serna

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

SHARON GUERRA,

      Plaintiff,

v.                                   Case No.:      D-202-CV-2021-06369

SEQUEL OF NEW MEXICO, LLC
d/b/a BERNALILLO ACADEMY,
SEQUEL YOUTH AND FAMILY SERVICES,
and AMIR RAFIEI, as Executive Director,

      Defendants.

## COURT-ANNEXED ARBITRATION CERTIFICATION

Plaintiff, by and through her counsel of record, Roybal-Mack & Cordova, P.C. certifies as follows:

[   ]    This party seeks only a money judgment and the amount sought does not exceed twenty-five thousand dollars ($25,000.00) exclusive of punitive damages, interest, costs, and attorney's fees.

[ X ]    This party seeks relief other than a money judgment and/or seeks relief in excess of twenty-five thousand dollars ($25,000.00) exclusive of punitive damages, interest, costs, and attorney's fee.

*Respectfully Submitted by:*

ROYBAL-MACK & CORDOVA, P.C.

/s/ *Amelia P. Nelson*
AMELIA P. NELSON
*Attorneys for Plaintiff*
4901 Chappell Dr. NE Suite B
Albuquerque, NM 87107
Phone: (505) 288-3500
Fax:    (505) 288-3501
Amelia@roybalmacklaw.com

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
12/23/2021 9:39 AM
CLERK OF THE COURT
Andrea I Gutierre

## AFFIDAVIT OF DUE DILIGENCE

| Case: D-202-CV-2021-06369 | Court: | County: Bernalillo | Job: CLERK OF THE COURT 6488250 |
|---|---|---|---|
| Plaintiff / Petitioner: Sharon Guerra | | Defendant / Respondent: Sequel of New Mexico, LLC dba Bernalillo Academy | |
| Received by: Accurate Process Serving & Notary | | For: Roybal-Mack & Cordova, P.C. | |
| To be served upon: Sequel of New Mexico, LLC dba Bernalillo Academy | | | |

I, Julia Pluemer, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**  Sequel of New Mexico, LLC dba Bernalillo Academy , 1801 Randolph Rd SE, Albuquerque, NM 87106

**Manner of Service:**  Unsuccessful Attempt

**Documents:**  Amended Issuance of Summons, Complaint, Court-Annexed Arbitration Cert, Entry, Jury Demand

**Additional Comments:**
1) Unsuccessful Attempt: Dec 21, 2021, 3:05 pm MST at 1801 Randolph Rd SE, Albuquerque, NM 87106
No access to front door. Locked facility

2) Unsuccessful Attempt: Dec 21, 2021, 3:50 pm MST at 1801 Randolph Rd SE, Albuquerque, NM 87106
No answer at the door. Business was locked and listed as ARA Southwest Division

_____          12/22/21
Julia Pluemer                                  Date

Accurate Process Serving & Notary
2220 Rio Grande Blvd NW
Albuquerque, NM 87104
505-730-7018

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

12/22/2021              October 31, 2024
Date                          Commission Expires

OFFICIAL SEAL
MARCI J TRUJILLO
NOTARY PUBLIC-State of New Mexico
My Commission Expires October 31, 2024